**WILKINSON et al. v. FEILD.**

No. 433.

United States District Court
W. D. Arkansas, Texarkana Division.

Dec. 1, 1952.

State of Arkansas; that there is a diver sity of citizenship between the parties plaintiff and defendant and the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

That on or about December 18, 1950, the defendant executed and delivered to plaintiffs' assignor, Ethel P. Wilkinson, a promissory note whereby defendant promised to pay to plaintiff or order $5,000 with interest thereon at the rate of four per cent per annum, interest payable yearly; that the said note was payable in yearly installments of $1,000 each, the first payment to be made on or before the 25th day of December, 1951, and subsequent payments to be made on or before the 25th day of December each year thereafter until the principal sum of the note and all interest thereon was paid in full, all amounts paid on the note to be applied first to payment of interest and the balance to principal; that if default was made in the payment of any installment for more than ten days after maturity, then the entire unpaid balance of the note should become due and payable at once at the option of the holder.

The plaintiffs attached to the complaint as exhibit A a copy of the note and alleged that said note was transferred and assigned for a valuable consideration to the order of the plaintiffs on December 22, 1950, and that defendant owes to plaintiffs the amount of said note and interest. Plaintiffs pray judgment against defendant for the sum of $5,000, interest and costs.

The defendant filed his answer on September 22, 1952, and admitted all the allegations in plaintiffs' complaint except the allegation that the defendant owes to the plaintiffs the amount of the note and interest.

Further answering, the defendant for his "Second Defense" alleged:

"That the plaintiff, Ethel Pearl Wilkinson, payee of the note attached to the Complaint as Exhibit A, agreed with the defendant, the maker of said note, prior to the time the said note was executed and delivered to said

---

J. Phillip Carroll and Rose, Meek, House, Barron & Nash, Little Rock, Ark., for plaintiff.

Catlett & Henderson, Little Rock, Ark., for defendant.

JOHN E. MILLER, District Judge.

On August 16, 1952, plaintiffs filed their complaint in which they alleged that they are members of a partnership doing business in Indiana and are the assignees of Ethel Pearl Wilkinson, a citizen of Indiana; that the defendant is a citizen of the

payee, that the payee would acquire a sufficient interest in a certain trust owning valuable property for the specific purpose of causing the trustees of said trust to lease said property to a corporation of which both the payee and this defendant were to be stockholders. The proceeds of said note were to be used for the purchase by the defendant of stock in said corporation, and the said note was to be repayable out of the corporate earnings, which conditions were expressly agreed to by plaintiff Ethel Pearl Wilkinson both prior to and at the time she received the said note. That the defendant spent the proceeds of said note, together with additional sums from his own funds, in the defraying of various expenses of the corporation; that thereafter plaintiff, Ethel Pearl Wilkinson, did acquire a sufficient interest in said trust to cause such lease to be given, but failed and refused to do so, and has entered into an arrangement with a third person in a venture directly in competition with the objects and purposes of such corporation, with the result that said corporation has been unable to do sufficient business to meet its expenses. By reason of the foregoing acts on the part of the plaintiff, Ethel Pearl Wilkinson, the consideration for said note has failed, and the failure of such consideration is hereby pleaded as a defense to this action."

■ Although the date upon which the defendant's answer was served upon plaintiffs does not appear in the record, the answer was filed on September 22, 1952, and it may be assumed that the answer was served upon plaintiffs on or before that date.

Then, on October 23, 1952, plaintiffs filed a "Motion to Dismiss" in which they stated, inter alia:

"Comes the plaintiffs, by their attorneys, Rose, Meek, House, Barron & Nash, who move that defendant's second defense be dismissed for failure to state a claim upon which relief can be granted and who further pray that the motion be treated as one for summary judgment as provided by Rule 12(b) * * *."

Prior to the amendment of Rule 12 in 1946, there was a great deal of confusion as to what was the proper method of testing the legal sufficiency of a defense. See 2 Moore's Federal Practice, Section 12.11, Page 2258. Included among the various procedures allowed by the courts were such devices as motions to strike and motions to dismiss, and several courts allowed the latter type of motion to be made as under Rule 12(b)(6).

Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A., provides, inter alia:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

■ It is evident that Rule 12(b) was intended to allow the enumerated defenses to be interposed against "* * * a claim, counterclaim, cross-claim, or third-party claim * * *" and was not designed to provide a procedural method for attacking an insufficient defense. It is true that prior to 1946 some courts, in an effort to provide some procedure for attacking an insufficient defense, allowed motions to dismiss as under Rule 12(b) (6). See Schenley Distillers Corp. v. Renken, D.C.E.D.S.C., 34 F.Supp. 678; Hartford-Empire Co. v. Glenshaw Glass Co., D.C.W.D.Pa., 47 F.Supp. 711.

■ However, it is no longer necessary to stretch Rule 12(b) beyond its proper dimensions, since Rule 12(f) was amended in 1946 so as to allow motions to strike "any insufficient defense". Thus it is clear that plaintiffs, in filing a "Motion to Dismiss" under Rule 12(b), have misconstrued their remedy, but the Court will treat their motion as a motion under Rule 12(f) to strike the alleged insufficient defense.

■ Rule 12(f) requires the motion to strike to be made within 20 days after the service of the pleading upon the movant, and, as heretofore stated, defendant's answer was filed on September 22, 1952 (and probably served upon plaintiffs on the same date) while plaintiffs' motion to dismiss (motion to strike) was not filed until October 23, 1952, more than 20 days after the filing of the answer. Nevertheless, since defendant has made no objection to the late filing, the Court will not deny the motion on that ground and will consider and decide the same on the merits.

The motion is based upon the following alleged grounds:

"a. Mrs. Wilkinson's loan and defendant's promise to pay was a separate written contract from the other matters alleged in the second defense of the answer.

"b. Defendant's allegation of an oral agreement that the note was to be repaid solely from corporate profits fails because evidence of such an agreement is inadmissible under the parol evidence rule.

"c. Defendant's pleadings clearly indicate that he has not performed his obligations under the alleged contract so that he cannot claim a failure of consideration by Mrs. Wilkinson in bar of plaintiff's claim."

■ The attorneys for the respective parties have filed excellent briefs in support of their contentions, and in addition the plaintiffs have supplied the Court with a copy of the discovery deposition of the defendant, Talbot Field, Jr. Although there is some doubt as to whether matters outside the pleadings should be considered by the Court in passing upon a motion under Rule 12(f), the Court feels that in the instant case the deposition of Mr. Field should be considered because the attorneys for both plaintiffs and defendant, in their respective briefs, have referred to the deposition and to the testimony contained therein. For a discussion of the use of outside matter in considering a motion under Rule 12(f), see 2 Moore's Federal Practice, Second Edition, Page 2320.

■ A defense should not be stricken if it is sufficient as a matter of law. Intra-Mar Shipping (Cuba), S. A. v. John S. Emery & Co., Inc., D.C., 11 F.R.D. 284. Nor should a defense be stricken if the defense presents a bona fide question of law or fact which should be heard on the merits. Maschmeijer v. Ingram, D.C.S.D. N.Y., 97 F.Supp. 639; 2 Moore's Federal Practice, Second Edition, Page 2320; Volume 5, Cyclopedia of Federal Procedure, Third Edition, Section 15.377, Page 380. Thus, the question before the Court is whether defendant's "Second Defense" is sufficient as a matter of law, or raises a bona fide question of law or fact.

The pleadings and the defendant's deposition do not indicate clearly where the alleged contract was made or where it was to be performed. However, since the law of Indiana and Arkansas, the two states wherein all the transactions occurred, is apparently the same with regard to the questions here presented, the result reached will be the same regardless of whether the contract was made or was to be performed in Arkansas or Indiana.

Defendant's answer, as elucidated in his deposition, seems to be based upon three possible theories. (1) The note was to be repaid only out of the corporate earnings. (2) The note was to become effective only upon the performance of a condition precedent, i. e., the securing by Mrs. Wilkinson of a lease of certain property to the corporation, and the failure of Mrs. Wilkinson to secure said lease prevented the note from becoming an effective and binding obligation. (3) The whole agreement was a single contract, i. e., Ethel

Pearl Wilkinson was to lend defendant $5,000 and to secure a lease of certain property to the corporation, and the defendant was to execute the note, organize the corporation and buy stock in the corporation; therefore, the securing of the lease was an integral part of the consideration for the note, and the failure of said consideration releases defendant from his obligation on the note.

As to the defense that the note was to be repaid only out of the corporate earnings, under the Arkansas law parol evidence cannot be introduced to prove such an agreement, and, inasmuch as defendant claims only an oral agreement, it is apparent that this alleged defense is insufficient as a matter of law. Abbott v. Kennedy, 133 Ark. 105, 201 S.W. 830; Warner v. Bonds, 111 Ark. 238, 163 S.W. 788. See also, Rice v. Milligan, 177 Ark. 427, 6 S.W.2d 554 and Nelson v. Wells, 191 Ark. 613, 87 S.W.2d 40.

The second defense, however, raises a substantial and difficult question. In answer to this question the parties assert and rely primarily upon two well settled rules of law. Plaintiffs ground their basic contention upon the law as stated in Abbott v. Kennedy, supra, wherein the Court, 133 Ark. at page 111, 201 S.W. at page 831, said:

"The note upon its face was a plain promissory note, for $1,000, payable one year from the date thereof, to the payee or his order. Appellee admitted the note was executed and delivered. This completed the contract between the parties to it. To permit oral testimony that the consideration was to be paid only upon a condition precedent was in contravention of the familiar rule which precludes the admission of parol evidence to contradict or substantially vary the legal import of a written instrument."

On the other hand, the defendant argues that the law as stated in Graham v. Remmel, 76 Ark. 140, 88 S.W. 899, controls in the instant case. In the Graham case, the Court, 76 Ark. at page 144, 88 S.W. at page 900 of the opinion quoted from

Burke v. Dulaney, 153 U.S. 228, 14 S.Ct. 816, 38 L.Ed. 698, as follows:

"And the evidence offered by the appellant, and excluded by the court did not in any true sense contradict the terms of the writing in suit, nor vary their legal import, but tended to show that the written instrument was never in fact delivered as a present contract, unconditionally binding upon the obligor according to its terms from the time of such delivery, but was left in the hands of Dulaney, to become an absolute obligation of the maker in the event of his electing, upon examination or investigation, to take the stipulated interest in the property in question. In other words, according to the evidence offered and excluded, the written instrument upon which this suit is based was not—except in a named contingency—to become a contract or promissory note which the payee could at any time rightfully transfer. Evidence of such an oral agreement would show that the contingency never happened, and would not be in contradiction of the writing. It would prove that there never was any concluded, binding contract, entitling the party who claimed the benefit of it to enforce its stipulations. * * *"

And, in Hunter v. First National Bank, 172 Ind. 62, 87 N.E. 734, 739, the Court said:

"The distinction in point of law between the conflicting contentions is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible. A promissory note, like any other written instrument, has no legal inception or valid existence until it has been delivered in accordance with the purpose and intention of the parties, and in support of a plea denying its execution it is competent to show, as between the parties to it, or others having notice, that the manual delivery of the instrument to the payee was accompanied by a condition which was

never fulfilled. * * * Burke v. Dulaney, 153 U.S. 228, 14 S.Ct. 816, 38 L.Ed. 698 * * *. A delivery may be conditional, without the use of express words to that effect at the time. That conclusion may be drawn from all the circumstances which properly form a part of the entire transaction * * *."

That the delivery of a note may be shown to have been conditional is also recognized in Section 68–116, Arkansas Statutes 1947, Annotated. See also, Comment, 4 Arkansas Law Review 168, 172; 20 A.L.R., pages 430–436.

Thus, on the one hand we have the rule which precludes the admission of parol evidence to contradict or vary the legal import of a written instrument, and opposed to that we have the rule that parol evidence is admissible to show that a promissory note, though absolute in form, was not to become a binding obligation except upon the happening of a certain event. The question presented then, insofar as the second defense is concerned, is which of these rules of law is applicable under the proof in the instant case.

The answer to this question may be found in Abbott v. Kennedy, supra. Oral testimony is not admissible to show that "the consideration was to be paid only upon a condition precedent," but such testimony is admissible to show that "it was the understanding between the parties that there was to be no binding contract at all when the same was executed and handed over to the payee or obligee and was not to become so until a certain event took place." Therefore, if the defendant is attempting to prove, by oral testimony, that Mrs. Wilkinson's obtaining of the lease was a condition precedent to the payment of the note, he is precluded by the parol evidence rule from asserting said defense. On the other hand, if defendant is attempting to prove that the obtaining of the lease was a condition precedent to a valid delivery of the note or was a condition precedent to the note's becoming a present contract, then the parol evidence rule provides no obstacle

to this alleged defense. As heretofore stated, repayment only out of corporate earnings clearly relates to payment and parol evidence is not admissible to prove such an agreement. But the defendant also stated in his "Second Defense" that Mrs. Wilkinson agreed with the defendant "prior to the time the said note was executed and delivered to said payee, that the payee would acquire a sufficient interest in a certain trust owning valuable property for the specific purpose of causing the trustees of said trust to lease said property to a corporation of which both the payee and this defendant were to be stockholders. The proceeds of said note were to be used for the purchase by the defendant of stock in said corporation, and the said note was to be repayable out of the corporate earnings, which conditions were expressly agreed to by plaintiff Ethel Pearl Wilkinson both prior to and at the time she received the said note." While the defendant does not expressly allege that the securing of the lease was a condition precedent to the validity of the note, the language used is broad enough to include such an allegation, and parol evidence in support of the allegation is admissible. If the jury should find that the securing of the lease by Ethel Pearl Wilkinson was a condition precedent to the note's becoming a present contract, and that such condition was not performed, then under the law as stated in Graham v. Remmel, supra, defendant will have a valid defense. Thus, this alleged defense is sufficient as a matter of law.

The third theory upon which defendant apparently relies, i. e., that the whole agreement was a single contract and that there was a failure of consideration, presents an interesting question. Although defendant's "Second Defense" does not expressly make such an allegation, the essence of this defense, as is more fully brought out in defendant's deposition, is that there was but one contract, to-wit: Ethel Pearl Wilkinson was to lend defendant $5,000 and to obtain a lease of certain property to the corporation; defendant was to execute the note, organize the corporation, buy stock in it, and see that the tourist attrac-

tion was placed in operation. Therefore, the failure on the part of Ethel Pearl Wilkinson to secure the lease constituted a failure of consideration and released defendant from his obligation on the note.

It is well settled that parol evidence is admissible to prove that the consideration for a note has failed. Section 68–128, Arkansas Statutes 1947, Annotated (Indiana has adopted the Negotiable Instruments Law and thus has the same statute); Ozark Diamond Mines Corp. v. Townes & Garanflo, 117 Ark. 552, 174 S.W. 151; Hamburg Bank v. Ahrens, 118 Ark. 548, 177 S.W. 14; Vinson v. Wooten, 163 Ark. 170, 259 S.W. 366; Poulas v. Kumpures, 189 Ark. 44, 70 S.W.2d 47. Plaintiffs, however, argue in their reply brief that: "This is not a case where defendant executed a note in return for Mrs. Wilkinson's promise * * * but rather for her money. If the former were true instead of the latter, then Graham v. Remmel, * * * Burke v. Dulaney, * * * Ozark Diamond Mines Corp. v. Townes & Garanflo, * * * Hamburg Bank v. Ahrens, * * * and Vinson v. Wooten, * * * might be applicable. In each of those cases, the note was. executed in return for a promise. When the promise failed, the note became unenforceable. In the case at bar, the note was executed in return for cash. The case consideration did not fail * * * Defendant would have us believe that Mrs. Wilkinson committed a fatal error in letting him have the $5,000 before further complying because the money was to forfeit if the *rest* of the consideration for his note failed. This is so absurd as to promote incredulity."

There are two fallacies in plaintiffs' argument: (1) the consideration which was to move from Mrs. Wilkinson might have been directed not only toward the note but also toward defendant's investment of the money in the corporation and defendant's continued promotion of the project. Gates v. Ritchie, 162 Ark. 484, 493, 258 S.W. 397; and (2) even though such an agreement might be "so absurd as to promote incredulity," nevertheless it is, at best, a disputed question of fact,

and a defense will not be stricken if it presents a bona. fide question of law or fact. Maschmeijer v. Ingram, supra; Intra-Mar Shipping (Cuba), S. A. v. John S. Emery & Co., Inc., supra; Volume 5, Cyclopedia of Federal Procedure, Third Edition, Section 15.377, supra.

It seems well settled that the parol evidence rule does not apply where the entire agreement of the parties has not been reduced to writing, and the rule does not exclude parol evidence of the part not in writing when there is no conflict between the oral and written parts of the contract. See, Almand v. Alexander, 180 Ark. 947, 951, 23 S.W.2d 611; Blaine v. Darwin, 160 Wash. 327, 295 P. 131; Comment, 4 Arkansas Law Review 168, 174; 20 A.L.R. Pages 477–481.

In Germania Bank v. Osborne, 81 Minn. 272, 83 N.W. 1084, 1085, the Court said:

"We should first determine what the contract was between these parties, and what relation the note bears to it. The contract was, in substance, a sale of the stock in consideration of the execution and delivery of the note, coupled with the right to return the stock and take up the note. The note expresses only the method of payment in case the maker did not exercise the right to return the stock. The note is in terms just what the parties agreed it should be. The contract preceded the execution and delivery of the note, and the note was executed and delivered as a result of the contract, not as itself the contract. The consideration for the note was the stock, provided the maker exercised the option to retain it. The consideration for the delivery of the stock was the payment of $400, according to the terms of the note, provided the maker exercised the same option. Although the whole transaction was an entirety, and the agreement for the sale was in a sense contemporaneous with the execution of the note, yet the parties did not reduce the agreement for the sale to writing in the terms of the note."

Therefore, parol testimony is admissible in the trial of the case to prove that the whole agreement was a single contract; that defendant performed his part of the contract; and that Mrs. Wilkinson's failure to obtain the lease amounted to a failure of consideration.

Plaintiffs also attack defendant's "Second Defense" on the ground that defendant alleges that the proceeds were to be used for the purchase of stock in the corporation and he further alleges that he spent said proceeds in defraying various expenses of the corporation, thus showing that defendant has not performed his part of the alleged contract and cannot defend on the ground that Mrs. Wilkinson failed to perform. But defendant, in his deposition, while admitting that he does not have any certificates of stock in the corporation, states that he has *invested* more than $5,000 in the corporation in defraying various expenses and that he is entitled to that amount of stock.

■■ A stock certificate is not necessary to the existence of a share of stock or its ownership. Agricultural Finance Corp. v. Brinkley, 188 Ark. 951, 68 S.W.2d 92; Hawley v. Upton, 102 U.S. 314, 26 L.Ed. 179. Consequently, whether or not defendant has expended the proceeds of the note for the benefit of the corporation and is entitled to stock is a disputed question of fact, and, as heretofore stated, a defense will not be stricken if it presents a bona fide question of law or fact.

The deposition of the defendant discloses that Mrs. Wilkinson owned the majority of the capital stock of the Trust which owned a parcel of land that all of the parties agreed, prior to the execution of the note, was essential to the successful operation of the tourist attraction. Apparently, the tourist attraction was built and placed in operation with money advanced to the corporation by Mrs. Wilkinson and with the $5,000 evidenced by the note in suit. The testimony as to the nature and extent of the property upon which the corporation had leases at the time the attraction was built, and the money expended, is admissible as an aid to the jury in determining whether the

obtaining of a lease by Mrs. Wilkinson on the Trust property was a condition precedent to a valid delivery of the note or was a condition precedent to the note's becoming a present contract.

Therefore, the allegation in defendant's answer that the note was to be repaid only out of corporate earnings, should be stricken. With regard to the remainder of defendant's answer, plaintiffs' motion to dismiss, which the Court has treated as a motion to strike, should be overruled.

An order in accordance herewith is being entered today.